# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| HAMDIJA BEGANOVIC,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>TYSON FRESH MEATS, INC.,<br><br>　　　　Defendant. | No.  C22-2052-LTS-KEM<br><br>**MEMORANDUM**<br>**OPINION AND ORDER** |

| | |
|---|---|
| THOMAS HART,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>TYSON FRESH MEATS, INC.,<br><br>　　　　Defendant. | No.  C22-2068-LTS-KEM<br><br>**MEMORANDUM**<br>**OPINION AND ORDER** |

| | |
|---|---|
| DONALD MERSCHBROCK,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>TYSON FRESH MEATS, INC.,<br><br>　　　　Defendant. | No.  C22-2069-LTS-KEM<br><br>**MEMORANDUM**<br>**OPINION AND ORDER** |

| CODY BRUSTKERN, | |
|---|---|
| Plaintiff, | No. C22-2070-LTS-KEM |
| vs. | |
| TYSON FRESH MEATS, INC., | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

| JOHN CASEY, | |
|---|---|
| Plaintiff, | No. C22-2073-LTS-KEM |
| vs. | |
| TYSON FRESH MEATS, INC., | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

## *I.    INTRODUCTION AND PROCEDURAL HISTORY*

This case is before me on a motion (Doc. 20) for summary judgment by defendant Tyson Fresh Meats, Inc. (Tyson) and a motion (Doc. 63) for summary judgment by plaintiffs Hamdija Beganovic, Thomas Hart, Donald Merschbrock, Cody Brustkern and John Casey (plaintiffs). Each party has filed resistances (Docs. 33, 70) and replies (Docs. 34, 17).[1] Oral argument is not necessary. *See* Local Rule 7(c).

Beganovic filed a petition (Doc. 2) in the Iowa District Court for Black Hawk County on October 17, 2022, asserting Tyson withheld wages in violation of Iowa Code § 91(A). On October 27, 2022, Tyson filed a notice (Doc. 1) of removal to this court,

---

[1] Plaintiffs also filed a supplemental resistance (Doc. 54) to Tyson's motion, arguing that they had good cause to do so under Federal Rule of Civil Procedure 6(b). Tyson replied (Doc. 65), noting that it did not object to plaintiffs' supplementation. Because Tyson does not object, I need not address this issue.

2

invoking the court's diversity of citizenship jurisdiction. Tyson then filed an answer (Doc. 5).

On January 6, 2023, Beganovic filed a motion (Doc. 13) to consolidate his case with those of the four other plaintiffs based on the substantially similar factual and legal issues presented in each.[2] I granted the motion on January 9, 2023, designating Beganovic as the lead plaintiff. Doc. 14. A bench trial is currently set for July 8, 2024.

## II.  SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id.* Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475

---

[2] The other cases are *Thomas Hart v. Tyson*, 22-CV-2068; *Donald Merschbrock v. Tyson*, 22-CV-2069; *Cody Brustkern v. Tyson*, 22-CV-2070; and *John Casey v. Tyson*, 22-CV-2073.

3

U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

4

### III. FACTUAL BACKGROUND

Tyson employed each plaintiff at its Waterloo, Iowa, location at all times relevant to this case. This dispute revolves around what payments, if any, plaintiffs are entitled to receive for their work in 2020 under Tyson's Annual Incentive Plan (AIP).

Tyson's AIP provides its eligible employees with an "opportunity to receive a cash incentive award" every year. Doc. 20-4 at 1. "This Plan is rooted in maintaining a strong link between pay and performance which results in a better alignment between the purposeful contributions of eligible team members and the achievement of annual corporate goals." *Id.* Awards under the AIP are determined as follows:

> For Plan purposes, eligible team members are assigned a target percent of base salary based on their position ("Target Award Percentage"). Team members can obtain their Target Award Percentage from their immediate supervisor or HR representative.
>
> A team member's target award potential will be their base salary times their Target Award Percentage prorated for variations in a team member's base salary and/or Target Award Percentage and for time not in an eligible position during the fiscal year (their "Target Award Potential").
>
> As described above, each Business Unit/Enabling Function segment's allocation is based on Operating Income and applicable Business Unit/Enabling Function performance, provided threshold performance is met. In addition, the Business Unit/Enabling Function leader may apportion the allocation within the Business Unit/Enabling Function segment based on performance at any level within the segment. The team members allocated award amount is their Target Award Potential adjusted for Company performance and allocation adjustments for Business Unit/Enabling Function segments and other additional allocations (their "Allocated Award Amount") . . . .
>
> The final Award of each individual team member, if any, is based on their Allocated Award Amount adjusted for individual contribution and performance as determined by the Business Unit/Enabling Function leader in his or her discretion. All allocations and individual Awards under this Plan are considered fully discretionary by Tyson Foods. In addition, the receipt of an Award by a team member or payment of an Award by Tyson

5

Foods or a Subsidiary does not guarantee any future Award. The receipt or payment of an Award is voluntary and occasional and does not create any contractual, vested or other right to receive any Award in the future, or other cash or benefits in lieu of an Award, even if similar actions have occurred repeatedly in the past.

Doc. 20-4 at 2. The AIP provides this sample calculation:

```
Individual Award Determination Example
$50,000   Base Salary (prorated)
x   5%    Target Award Percentage (prorated)
$2,500    Target Award Potential
x  90%    Allocation Adjustments (Company, Business Unit/Enabling Function Scorecards and other)
$2,250    Allocated Award Amount
x 110%    Individual contribution and performance adjustments (discretionary determination by leader)
$2,475    Team Member Final Award (if any)
```

All plaintiffs were eligible team members under the AIP while employed by Tyson.[3] Tyson officials entered the plaintiffs' AIP bonuses into its internal systems on November 13, 2020, with the amounts set to be paid on November 25, 2020. Doc. 65-2 at 9.[4] At some point, the "year-end decision makers" received a document titled "Year-End Compensation Review and Decision-Making Reference." Doc. 54-3 at 1. The document stated that it was intended to "help guide [managers] through the year-end process." *Id.* It provided: "As always, funding [for the AIP] in Workday is preliminary to aide in your decision making and will be finalized Nov. 11. Significant changes are not expected." Doc. 54-3 at 2. The document also noted that managers were not to communicate with their team members regarding AIP awards prior to November 18, 2020, as the recommendations could change before that time. *Id.* at 3. It stated that the "effective/pay" date would be November 25, 2020. *Id.* at 2.

---

[3] Hart is the only plaintiff who had an employment contract with Tyson. *See* Doc. 20-5. All other plaintiffs were at-will employees.

[4] Plaintiffs anticipated they would receive the following amounts: Beganovic, $33,911; Brustkern, $35,276; Merschbrock, $73,278; Hart, $128,567; and Casey, $17,861. Doc. 65-2 at 9.

6

On November 18, 2020, Tyson sent the following email to various managers:

> [M]anagers should now communicate the awards to their team members. Team members will have access to view annual incentive payments in My Pay or Team Member Self-Service as soon as the payroll process is complete the morning of Monday, November 23. Therefore, it is best to communicate before Nov. 23.

Doc. 71-1 at 6. That same day, plaintiffs received statements notifying them of their award. Doc. 20-6 at 1. These statements listed the employee's "FY20 Annual Incentive Plan (AIP) Payout," and stated that the AIP would be paid on November 25, 2020. Doc. 33-4 at 1. These statements also included the following note at the bottom of the page:

> This statement is intended for general information purposes only. While reasonable measures have been taken to report this information accurately, please contact Human Resources at (479) 290-5000 if you notice any error or omission (or possible error or omission) in this statement. All compensation and incentives are subject to the plans, policies and procedures of Tyson Foods (the "official documents"), as may be amended or terminated by Tyson Foods at any time in its sole discretion, and nothing stated in this statement shall take precedent over the official documents. If there is any inconsistency between the official documents and any informal written communication (such as this one) or any oral representation, the official documents will always govern. Tyson Foods reserves the right to correct any errors and omissions in this statement in its sole discretion at any time. Clerical errors or other mistakes, including a misstatement of dollar amounts, do not create a right to receive or retain any compensation or incentives. Any payouts made to eligible team members under the AIP are considered fully discretionary by Tyson Foods, and may be adjusted for corporate, business unit and individual contribution and performance as determined by Tyson Foods in its sole discretion. This statement (as well as any information contained in this statement) does not constitute a contract of employment, guarantee of continued employment or agreement to pay a specific salary or incentive amount.

Doc. 20-8 at 1.

On November 19, 2020, Tyson placed each plaintiff on leave without pay pending the completion of an internal investigation. The investigation, which began at some point in November 2020, came in response to a lawsuit against Tyson in an Iowa state court (filed by parties unrelated to this case). In that lawsuit, it was alleged that management-

level Tyson employees had participated in a betting pool in which the participants wagered on how many employees at the Waterloo plant would test positive for COVID-19. Doc. 20-7 at 1-2. Based on the facts discovered during that investigation, Tyson's Internal Governance Committee recommended that then-CEO Dean Banks terminate each plaintiff's employment without AIP bonuses. Doc. 20-7 at 2. He did so on December 15, 2020. Doc. 20-1 at 4.

### IV. ANALYSIS

Plaintiffs brought their claims under the Iowa Wage Payment Collection Law (IWPCL), Iowa Code § 91A.1. *See* Docs. 2; 14. The IWPCL "requires employers to 'pay all wages due its employees, less any lawful deduction' on designated regular intervals of time." *Condon Auto Sales & Serv., Inc. v. Crick*, 604 N.W.2d 587, 596 (Iowa 1999) (quoting Iowa Code § 91A.3(1)). "Wages" are defined as compensation owed for the following:

> a. Labor or services rendered by an employee, whether determined on a time, task, piece, commission, or other basis of calculation.
>
> b. Vacation, holiday, sick leave, and severance payments which are due an employee under an agreement with the employer or under a policy of the employer.
>
> c. *Any payments to the employee* or to a fund for the benefit of the employee, including but not limited to payments for medical, health, hospital, welfare, pension, or profit-sharing, *which are due an employee under an agreement with the employer or under a policy of the employer*. The assets of an employee in a fund for the benefit of the employee, whether such assets were originally paid into the fund by an employer or employee, are not wages.
>
> d. Expenses incurred and recoverable under a health benefit plan.

Iowa Code § 91A.2 (emphasis added). A bonus constitutes a wage if the employer is obligated to pay the bonus. *Dallenbach v. MAPCO Gas Prod., Inc.*, 459 N.W.2d 483, 487 (Iowa 1990). Employers who fail to pay earned wages are liable for unpaid wages, court costs and attorney fees incurred from recovering the unpaid wages. Iowa Code §

8

91A.8. If the employer acted intentionally, it is liable for liquidated damages. *Id.* The IWPCL is a remedial statute intended to be liberally construed. *Hornby v. State*, 559 N.W.2d 23, 26 (Iowa 1997).

The parties seem to agree the policy itself governs this dispute and that the only issue is whether Tyson owed plaintiffs AIP bonuses under the policy.[5] As a threshold matter, the parties disagree as to which state's law should be applied to this issue. Tyson argues this question should be decided according to Arkansas law, as the AIP states, "This Plan shall be construed, administered and enforced in accordance with the laws of Arkansas without regard to conflicts of law." Doc. 20-4 at 5. The plaintiffs argue that Iowa law applies, as Arkansas does not have a significant relationship to the dispute.

"Federal courts sitting in diversity apply the choice-of-law rules of the forum state." *Cicle v. Chase Bank USA*, 583 F.3d 549, 553 (8th Cir. 2009) (citing *Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007)). "Before applying the forum state's choice-of-law rules, however, a trial court must first determine whether a conflict exists." *Prudential Ins. Co.,* 475 F.3d at 924. Therefore, the first issue is whether there is a conflict between Iowa law and Arkansas law. Both Iowa law and Arkansas law focus on the language of the relevant employment policy. *See Phipps v. IASD Health Services Corp.,* 558 N.W.2d 198, 202 (Iowa 1997) (stating the plaintiff was not entitled to a bonus under the relevant policy, and therefore, his IWPCL claim failed); *Artman v. Hoy*, 257 S.W.3d 864, 869 (Ark. 2007) ("When contracting parties express their intention in a written instrument in clear and unambiguous language, it is the court's

---

[5] Many cases brought under the IWPCL include a claim for breach of contract, which the plaintiffs have not alleged here. Because the IWPCL allows employees to collect wages owed under an employer's policy, a formal contract is not necessary. Iowa Code § 91A.2; *see also Viafield v. Engels*, No. 15–1663, 2016 WL 4054175, at *2 (Iowa. Ct. App. July 27, 2016) ("The absence of an employment contract is not dispositive of whether Engels is entitled to payment of his unused accrued PTO, however. Section 91A.2(7)(b) provides an employee is entitled to payment of wages due to an employee under an agreement with the employer or under a policy of the employer.") (internal quotation marks omitted).

9

duty to construe the writing in accordance with the plain meaning of the language employed.").

Plaintiffs do not cite any provision of the AIP suggesting that the bonuses vest, or otherwise become a contractual obligation, upon receipt of the pre-award estimate. At most, they point to the portion of the policy that states "a team member must be an employee of Tyson Foods or a Subsidiary on the Award payment date to receive any Award or payout under this Plan." Doc. 33 at 9 (citing Doc. 20-4 at 3). Plaintiffs then point to another provision in the policy that states:

> This Plan may, at any time and in the sole discretion of Tyson Foods, be amended, suspended or terminated in whole or in part, provided that: No amendment, suspension or termination shall adversely affect the rights of any team member to an Award that was apportioned before such amendment, suspension or termination is adopted.

Doc. 20-4 at 4. Therefore, plaintiffs conclude, they were entitled to their AIP bonuses because they were employees as of the November 25, 2020, payment date.

This argument is unavailing. While employment at the time of payout may be necessary, at no point does the AIP suggest that employment alone is sufficient to create the right to receive a bonus.[6] Instead, the policy states that AIP awards are purely discretionary. *See* Doc. 20-4 at 2 ("The final Award of each individual team member, if any, is based on their Allocated Award Amount adjusted for individual contribution and performance as determined by the Business Unit/Enabling Function leader in his or her discretion. All allocations and individual Awards under this Plan are considered fully discretionary by Tyson Foods."). Plaintiffs do not list any facts suggesting otherwise. While the AIP bonuses were routinely awarded, they had previously been adjusted downward "as part of the individual award determination." Doc. 20-6 at 1. Plaintiffs do not cite any cases applying either Iowa law or Arkansas law demonstrating that they

---

[6] If anything, this portion of the policy undermines the plaintiffs' other arguments that bonuses vest prior to the payment date, as it suggests Tyson considers the payment date to be the determinative date.

are entitled to discretionary bonuses, and neither state's laws are amenable to their claim. *See Moody v. Bogue*, 310 N.W.2d 655, 656 (Iowa. Ct. App. 1981) (concluding it would be reversible error for a court to substitute its judgment for that of an employer if the employer had the discretion to award bonuses under the employment contract based on its own subjective evaluation of the employee); *see also PFS Distributing Co. v. Raduechel*, 387 F. Supp. 2d 1020, 1023-24 (S.D. Iowa 2005), *aff'd*, 574 F.3d 580 (8th Cir. 2009) (adopting *Vigoro Indus., Inc. v. Crisp*, 82 F.3d 785, 791 (8th Cir.1996)); *Vigoro Indus., Inc.*, 82 F.3d at 791 (applying Arkansas law) ("When a contract term leaves a decision to the discretion of one party, that decision is virtually unreviewable.").[7]

In response, plaintiffs rely heavily on two facts to argue that their rights to the AIP bonuses had already vested: (1) Tyson notified them that they should communicate the AIP awards to their team members and (2) plaintiffs themselves received statements listing their anticipated payouts.[8] However, they do not argue that the AIP statements themselves amounted to a Tyson policy.[9] Moreover, as noted above, the statements included the following language:

> If there is any inconsistency between the official documents and any informal written communication (such as this one) or any oral representation, the official documents will always govern. Tyson Foods reserves the right to correct any errors and omissions in this statement in its sole discretion at any time. . . . Any payouts made to eligible team members under the AIP are considered fully discretionary by Tyson Foods, and may be adjusted for corporate, business unit and individual contribution and performance as determined by Tyson Foods in its sole discretion. This

---

[7] Because I am able to discern no material conflict between Iowa law and Arkansas law with regard to the analysis of plaintiffs' claims, I will apply Iowa law while noting that the outcome would be the same under Arkansas law.

[8] Plaintiffs cite various Iowa cases holding that a bonus is not due until it can be accurately estimated. *See, e.g., Runyon v. Kubota Tractor Corp.*, 653 N.W.2d 582, 586 (Iowa 2002). However, this does not mean a bonus becomes due at the moment it can be calculated. The employee must also meet the eligibility requirements of the policy. *Id.*

[9] The plaintiffs' sole argument is that "Tyson was without discretion to cancel the awards effective November 18, 2020[,] based on its own policy and internal directives." Doc. 63-3 at 3. In light of the policy language, this is simply wrong.

11

statement (as well as any information contained in this statement) does not constitute a contract of employment, guarantee of continued employment or agreement to pay a specific salary or incentive amount.

Doc. 20-8 at 1.

The express language of both Tyson's AIP policy and the AIP statements on which plaintiffs rely could not be more clear: Tyson was under no contractual obligation to make AIP bonus payments to plaintiffs for their work in 2020. As such, the withheld AIP bonuses are not "wages" that plaintiffs may recover under the IWPCL. Tyson is entitled to judgment in its favor as a matter of law.[10]

## V. CONCLUSION

For the reasons set forth herein,

1. Tyson's motion (Doc. 20) for summary judgment is **granted in its entirety**. All claims asserted against Tyson in these consolidated cases are **dismissed with prejudice**.

2. Plaintiffs' motion for summary judgment (Doc. 63) is **denied** in its entirety.

3. Judgment **shall enter** in favor of **Tyson** and against the plaintiff in each of the consolidated cases.

4. The trial of this case, scheduled to begin on June 8, 2024, is **canceled**.

5. The Clerk of Court shall **close all five of the consolidated cases**.

**IT IS SO ORDERED.**

**DATED** this 15th day of August, 2023.

_____
Leonard T. Strand, Chief Judge

---

[10] For the same reason, plaintiffs are not entitled to liquidated damages under the IWPCL.